**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| FIDELITY INTERIOR CONSTRUCTION, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE SOUTHEASTERN CARPENTERS REGIONAL COUNCIL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, <br><br> Defendant. | CIVIL ACTION NO. 1:05-CV-2938-RWS |

**ORDER**

This case is before the Court on Plaintiff's Motion for Summary Judgment [Dkt. No. 61] and Defendant's Motion for Summary Judgment [Dkt. No. 65]. After considering the entire record, the Court enters the following Order.

**Background[1]**

Plaintiffs in this case are Fidelity Interior Construction, Inc. and Fidelity

---

[1] The background is drawn from Plaintiff's Complaint [Dkt. No. 1] and Defendant's Answer [Dkt. No. 4].

AO 72A
(Rev.8/82)

Interiors, LLC (together, "Fidelity").[2]  Fidelity engages in the business of performing interior construction work in the commercial market.  Defendant in this case is the Southeastern Carpenters Regional Council of the United Brotherhood of Carpenters and Joiners of America ("the Council").  The Council is an affiliate of the United Brotherhood of Carpenters.  In early 2004, Defendant had launched its "Atlanta Area Standards Campaign," which was aimed at achieving certain goals with regard to wages, hours, and other working conditions and benefits for carpenters being hired in the Atlanta area.  The Council did not believe that Fidelity was meeting the area standards, making Fidelity one of the Council's targets during the campaign.  The Council appears to have sent mailings to general contractors who hired Fidelity to warn them of their planned pickets and to educate them about their Atlanta area standards.  The Council also engaged in several demonstrations at various locations where

---

[2]This lawsuit was filed in the name of the proper Plaintiff, Fidelity Interior Construction, Inc.  In April 2006, Fidelity Interiors, LLC, was formed, including the same principals as the original company, along with one additional person.  After April 2006, all work at issue was performed by the LLC.  Fidelity filed a motion to join as an additional party Plaintiff, Fidelity Interiors, LLC [Dkt. No. 84], which motion was granted by the Court [Dkt. No. 91].

2

they believed Fidelity to be working on projects for general contractors.[3] The Council claims that it directed its campaign clearly and specifically at the primary employer: Fidelity. But Fidelity contends that the Council's campaign was inappropriate under § 8(b)(4)(ii) of the Labor Relation Act. 29 U.S.C. § 8(b)(4). Both parties have moved for summary judgment.

## Discussion

I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(C). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"

---

[3] Examples include the Colony Square construction project in midtown Atlanta and the Emory Crawford Long construction project in Decatur. Whether Fidelity was actually on-site during the protests is an issue that the parties contest.

Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

4

(1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (stating that once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

II. Plaintiff's Motion for Summary Judgment

With this standard as a foundation, the Court turns first to Plaintiff's Motion for Summary Judgment [Dkt. No. 61]. To establish a violation of § 8(b)(4)(ii)(B), Plaintiff must prove that the Council's actions had an unlawful secondary object.[4] Courts consider the union's intent in making the

---

[4]Section 8(b)(4) of the Labor-Management Relations Act makes it unlawful for a union or its agents
    (ii) to threaten, coerce, or restrain any person engaged in
    commerce or in an industry affecting commerce, where in either
    case an object thereof is:
    (B) forcing or requiring any person . . . to cease using, selling,
    handling, transporting or otherwise dealing in the products of any
    other producer, processor, or manufacturer, or to cease doing
    business with any other person, or forcing or requiring any other
    employer to recognize or bargain with a labor organization as the
    representative of his employees.
29 U.S.C. § 158(b)(4)(ii).

determination of whether their purpose is appropriate under the Act. NLRB v. Teamsters Local 968, 225 F.2d 205, 209-11 (5th Cir. 1955).

Section 8(b)(4)(ii)(B) is violated when: (1) the union's conduct threatens, coerces or restrains any neutral employer; and (2) the conduct's object is to force another employer to recognize and bargain with a union that has not been certified. Kentov v. Sheet Metal Workers' Intern. Ass'n Local 15, AFL-CIO, 418 F.3d 1259, 1264 (11th Cir. 2005). It is well recognized that § 8(b)(4)(ii) prohibits secondary boycotts and that picketing is a form of "threaten[ing], coerc[ing] or restrain[ing]" when it is done with a prohibited object. Id. According to the 11th Circuit, "coerce" in this context involves "nonjudicial acts of a compelling or restraining nature, applied by way of concerted self-help consisting of a strike, picketing, or other economic retaliation and pressure in the background of a labor dispute." Id. While primary picketing is not prohibited by the Act, secondary picketing, which affects the employer, client, or customer of the primary organization, is not permitted. Id.

The determination of whether a common situs picketing is deemed primary or secondary is a fact-specific inquiry. In Sailors' Union of the Pacific (Moore Dry Dock), 92 N.L.R.B. 547, 549 (1950), the National Labor Relations

Board set out what are now considered the minimum standards that must be met for common situs picketing to be considered primary.  These factors include (1) whether the picketing occurs when the primary employer is located on the secondary premises, (2) whether the primary employer is engaged in his normal business at the situs, (3) whether the picketing clearly discloses that the dispute is only with the primary employer, and (4) whether the picketing takes place reasonably close to the situs.  Id.  Courts are to employ these factors in a consideration of the totality of the circumstances in determining whether common situs picketing is primary or secondary.  Electrical Workers, Local 861 (Plaunch Electric), 135 N.L.R.B. 250, 255 (1962).  Other factors that may be considered under the totality of the circumstances test include:

> (1) whether the picketing union beforehand makes known to other unions its intent to picket; (2) the picketing union knows that it pickets on teh job site and not to cross such picket lines; (3) an understanding between a secondary employer and the picketing union that work interruptions will cease if and when a picket is removed; (4) threats, veiled or otherwise, by picketing union that a secondary employer was not using good business judgment in doing business with the primary employer; (5) picketing only at job sites where other unions are working and not at job sites where only nonunion workers are employed, and where picketing is never done at the primary employer's home office; (6) the failure of a picketer to answer inquiries of others as to the purpose of the picketing.

Ramey v. Local Union No. 544, Painters, 472 F.2d 1127, 1131, 1136 (5th Cir. 1973).

In this case, Plaintiffs move for summary judgment on their claim under Section 8(b)(4)(ii)(B), arguing that under the totality of the circumstances test, the Court should rule as a matter of law that the Council's picketing had the secondary object of coercing neutral parties to cease employing Plaintiff until Plaintiff met the Council's Area Standards. However, the Court concludes that a genuine issue of material fact exists as to whether the Council's picketing was primary or secondary. Defendant aptly points to several contested issues in the record. For example, the parties dispute the exact intent of the Council in executing their campaign: Plaintiff argues that Defendant intended to intimidate, threaten, and coerce general contractors so that they would not hire Fidelity,[5] while Defendant argues that their intent was merely to ensure that their Area Standards were being considered by all Atlanta employers.[6] Another example of a disputed issue is the nature of the picketing that occurred: Plaintiff

---

[5] See Pl.'s Mot. for Summ. J. [Dkt. No. 61] at 9-13 (citing testimony by Mr. Larry Phillips regarding the Council's intent).

[6] See Def.'s Resp. to Pl.'s Mot. for Summ. J. [Dkt. No. 81] at 3-4 (citing testimony by Mr. Larry Philips regarding the Council's intent).

8

insists that noisy, threatening demonstrations occurred,[7] while Defendant maintains that peaceful, quiet picketing occurred.[8] Another important example is the parties' dispute over whether Defendant picketed at sites where Fidelity was not actually working: Plaintiffs and their witnesses insist that such inappropriate picketing occurred, while Defendants and their witnesses hold that they did not engage in such conduct.  The contested nature of such issues is reflected in the record, as well, with conflicting deposition testimony coming from each side.  Each factor that the Court is to consider in deciding this claim is in dispute, and it is therefore impossible to rule as a matter of law that Plaintiff's claim has succeeded.  As a result, the Court concludes that genuine issues of material fact exist and that summary judgment would be inappropriate on Plaintiff's §8(b)(4)(ii)(B) claim and their Motion [Dkt. No. 61] shall be **DENIED**.

III. Defendant's Motion for Summary Judgment

Plaintiff has alleged three types of conduct it claims have violated the

---

[7] See Pl.'s mot. for Summ. J. [Dkt. No. 61] at 29 (describing the number and noise level of the protesters).

[8] See Def.'s Resp. to Pl.'s Mot. for Summ. J. [Dkt. No. 81] at 19-20 (describing measures the Council took to avoid making too much noise).

AO 72A
(Rev.8/82)

prohibition of § 8(b)(4) of the Labor-Management Relations Act.  First, Fidelity alleges that there has been correspondence and other communication with third parties which Fidelity characterizes as "threat[s] to picket" if third parties did business or continued to do business with Fidelity.  Second, Fidelity alleges that there has been "common situs" picketing on job sites where Fidelity was working, as part of the Council's Atlanta area standards publicity campaign.  And third, Fidelity alleges that there have been handbilling and bannering publicity activities of the Council's Atlanta area standards campaign.  In its Motion for Summary Judgment, the Council submits that its conduct directed at Fidelity in the course of its Atlanta area standards campaign is protected by the First Amendment to the U.S. Constitution and the National Labor Relations Act and thus falls outside the prohibitions of § 8(b)(4).

In order to succeed under their § 8(b)(4)(ii)(A) claim, Plaintiff must prove that the union had an objective to have employees join a union or to obtain recognition of a union by an employer.  In its Motion for Summary Judgment, Defendant argues that there is no evidence of an object proscribed by § 8(b)(4)(ii)(A), insisting that the union's intent, not the effect of its conduct, is determinative.  N.L.R.B. v. Int'l Rice Milling Co., 341 U.S. 665, 672 (1951).

However, the Court concludes, based on the record before it, that there is a genuine issue of material fact as to the Council's intent.  As described above, both Plaintiff and Defendant have put forth conflicting deposition testimony as to the intent of the Council in its campaign.[9]  For this reason, the Court declines Defendant's invitation to grant summary judgment on this claim, as disputed issues of material fact remain to be resolved.

In order to succeed under their § 8(b)(4)(ii)(B) claim, Plaintiff must show that there was inappropriate common situs picketing or that there was prohibited bannering and handbilling taking place during the Council's Atlanta area standards campaign.  First, Defendant argues that its picketing was not prohibited under the law because it claims that the picket signs used clearly identified the primary employer as the subject and target of the demonstration. The Council claims that it used two picket signs: one reading "Fidelity Stop Lowering Area Standards for Carpenters" and the other reading "Maintain Area Standards for Carpenters."  Plaintiff, however, disputes the clarity of the picketers' target.  Fidelity argues that most of the signs did not bear the name of the company being targeted and that even the ones that did only said "Fidelity"

---

[9] See supra notes 5-8 and accompanying text.

which is ambiguous at best.  The Court concludes, based on the record, that the facts surrounding the nature of the protest and the signs utilized during picketing are contested and that summary judgment would be inappropriate at this point of the litigation.

Defendant also argues that summary judgment should be granted because the bannering and handbilling that took place in connection with its Atlanta area standards campaign were entirely appropriate under the law.  Fidelity alleges that the Council's handbilling and bannering activities violate § 8(b)(4)(ii)(B) because these activities were performed at times when Fidelity was not at the work site or reasonably close to the situs.[10]  Plaintiff also alleges that the Council's banners were accompanied by loud shouting, clapping, and inappropriate noise.  Defendant argues in its Motion for Summary Judgment that the bannering and handbilling occurred only at Fidelity work sites and that the banners were peaceful, stationary, and lawful.  The Court concludes once again that genuine issues of material fact exist with regard to the nature of the bannering and handbilling, as the record shows conflicting evidence

---

[10] See Pl.'s Memo. of Law in Resp. to def.'s Mot. for Summ. J. [Dkt. No. 77] at 8-9 (citing Dep. of Lain 42-44, 82, 84).

surrounding the circumstances of the protest and campaign. Therefore, summary judgment is inappropriate on this point and Defendant's Motion [Dkt. No. 65] shall be **DENIED**.

## Conclusion

In conclusion, based on the foregoing, Plaintiff's Motion for Summary Judgment [Dkt. No. 61] is hereby **DENIED**, and Defendant's Motion for Summary Judgment [Dkt. No. 65] is hereby **DENIED**.  The parties shall submit their proposed consolidated pretrial order within thirty (30) days of the entry of this Order.

**SO ORDERED**, this   31st   day of March, 2008.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE