**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| FIDELITY INTERIOR CONSTRUCTION, INC., : : : : Plaintiff, : : v. : : THE SOUTHEASTERN CARPENTERS REGIONAL COUNCIL OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, : : : : : : : : : : Defendant. : | CIVIL ACTION NO. 1:-05-CV-2938-RWS |

## **ORDER**

This case is before the Court on Defendant's Motion to Stay [152] and Defendant's Motion for Judgment as a Matter of Law or in the alterative Motion for a New Trial [153]. After considering the entire record, the Court enters the following Order.

## Background

Plaintiff Fidelity Interior Construction, Inc., (hereinafter "Fidelity") brought this suit against Defendant Southeastern Carpenters Regional Council (hereinafter "the Council") for damages resulting from unlawful picketing activities pursuant to § 8(b)(4)(ii) of the Labor Relations Act ("NLRA"). 29 U.S.C. § 158(b)(4). At trial, the jury found in favor of Plaintiff and awarded damages for Fidelity's lost profits. Defendant now moves to stay and moves for judgment as a matter of law or in the alternative for a new trial.

## Analysis

### I. Motion to Stay

Defendant has submitted a Motion to Stay [Dkt. No. 152] pending disposition of its post-judgment motion filed pursuant to Rules 50 and 59. FED. R. CIV. P. 50, 59. Rule 62(b) authorizes the Court, within its discretion, to stay execution pending disposition of the motion. Rule 62(b) of the Federal Rules of Civil Procedure provides as follows:

> On appropriate terms for the opposing party's security, the court may stay the execution of a judgment - or any

2

AO 72A
(Rev.8/82)

> proceedings to enforce it - pending disposition of any of the following motions:
>
> >  (1) under Rule 50, for judgment as a matter of law;
> >
> >  (2) under Rule 52(b), to amend the findings or for additional findings;
> >
> >  (3) under Rule 59, for a new trial or to alter or amend a judgment; or
> >
> >  (4) under Rule 60, for relief from a judgment or order.

FED. R. CIV. P. 62(b).

In its Motion, Defendant indicates that its Rule 50 and Rule 59 motions raise substantial issues and that Plaintiff will not be prejudiced by a stay. Defendant has not set forth any facts that would warrant entry of a stay and consequently, the Court concludes that the Motion to Stay [Dkt. No. 152] is **DENIED**.

## II. Motion for Judgment as a Matter of Law or for a New Trial

Defendant has also submitted a Motion for Judgment as a Matter of Law or in the Alternative Motion for a New Trial [Dkt. No. 151]. Under Fed. R. Civ. P. 50:

3

> If during a trial by jury a party has been fully heard on an
> issue and there is no legally sufficient evidentiary basis for a
> reasonable jury to find for that party on that issue, the court
> may determine the issue against that party and may grant a
> motion for judgment as a matter of law against that party
> with respect to a claim or defense that cannot under the
> controlling law be maintained or defeated without a
> favorable finding on that issue.

FED. R. CIV. P. 50 (a)(1). If such a motion is made prior to the submission of the case to the jury but is denied by the Court, as occurred here, the moving party may renew the motion within ten days after entry of the judgment. FED. R. CIV. P. 50 (b). Judgment should be entered in favor of the movant only if, drawing all factual inferences and resolving all credibility determinations in favor of the nonmoving party, reasonable jurors could not have arrived at a contrary verdict. Munoz v. Oceanside Resorts, Inc., 223 F.3d 1340, 1344-45 (11th Cir. 2000).

A litigant renewing a motion for judgment as a matter of law may join in its request a motion for a new trial under Federal Rule of Civil Procedure 59. While the considerations governing the resolution of such a motion are analogous to those that dictate the disposition of a motion for judgment as a matter of law, the showing a moving party must make to obtain a new trial is

4

less arduous than that required in the context of Rule 50; specifically, unlike a motion for judgment as a matter of law, the trial judge is free to independently weigh the evidence when deciding a motion for new trial. Williams v. City of Valdosta, 689 F.2d 964, 973 (11 th Cir. 1982). In doing so, the trial court is to view not only that evidence favoring the jury verdict but also the evidence in favor of the party seeking a new trial. Id. Indeed, a trial judge may grant a new trial for reasons which would not support judgment as a matter of law. O'Neil v. W.R. Grace and Co., 410 F.2d 908, 913 (5th Cir. 1969).

A judge should grant a motion for a new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001). Rule 59(a) allows for a new trial "on all or part of the issues." FED. R. CIV. P. 59(a).

However, a motion brought pursuant to Rule 59 may not "relitigate old matters, raise arguments or present evidence that could have been raised prior to the entry of judgment." Linet, Inc. v. Village of Wellington, 408 F.3d 757, 763 (11th Cir. 2005) (stating that motion to amend or alter judgment was essentially

5

a motion to reconsider the district court's prior summary judgment order and should be examined under similar standard).

First, Defendant argues that Plaintiff failed to prove damages. Second, Defendant claims that the Court's instructions incorrectly charged the jury regarding "lawful" conduct. The Court shall address each of these arguments in turn.

**A. Damages**

The Council seeks judgment notwithstanding the jury's verdict pursuant to Rule 50(b) for Plaintiff's alleged failure to adequately prove the third element of its Section 303 claim - damages. In the alternative, the Council seeks a new trial pursuant to Rule 59(a) on the grounds that the damages awarded to Plaintiff by the jury are excessive and against the great weight of the evidence presented by Plaintiff. The Council claims that Plaintiff proved actual losses of $31,426.00 and that the rest of its damages claim is pure conjecture and speculation. The Council asks the Court that any claim for damages beyond this number be rejected as overly-speculative and uncertain.

According to the Eleventh Circuit, Section 303 damages

6

> need not be capable of precise measurement; it is, however, necessary that any amount recovered be a just and reasonable approximation of the actual injury sustained as a result of the illegal strike. It is nonetheless imperative that a district court refrain from indulging in conjecture or speculation in awarding damages. Only actual losses incurred as a result of the strike are recoverable.

American Bridge Div., U.S. Steel Corp. v. IUOE Local 487, 772 F.2d 1547, 1552 (11th Cir. 1985) (citations omitted); see also Taylor Milk Co. v. Int'l Bhd. of Teamsters, 248 F.3d 239, 247 (3d Cir. 2001) ("[A]ll that is required is that sufficient facts be introduced for a court to arrive at an intelligent estimate without speculation or conjecture") (citations omitted); Vulcan Materials Co. v. United Steelworkers, 430 F.2d 446, 457 (5th Cir. 1970). Indeed it is axiomatic that where uncertainty as to the damages stems from the defendant's illegal conduct, the defendant should not benefit from the uncertainty it created. Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd., 100 F.3d 1353, 1365 (7th Cir. 1996) (specifying that in the calculation of damages, "doubts should be resolved against the wrongdoer"). The fact that the calculation of economic damages cannot be made with absolute certainty does not preclude recovery of those damages. See, e.g., Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563, 51 S. Ct. 248, 250 (1931) ("The wrongdoer is not

7

entitled to complain that [damages] cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise."). This general rule has been adopted by courts in Section 303 actions. See, e.g., <u>Great Coastal Express, Inc. v. Int'l Bhd. Of Teamsters, Chauffers, Warehousemen and Helpers of America</u>, 511 F.2d 839 (4 th Cir. 1975).

Through expert opinions and other evidence offered at trial, Plaintiff suggested that its business would have grown and that income and profits would have grown, but for the conduct of Defendant. In its brief here, the Council presents five assumptions upon which it believes the jury's award of damages rests. In response, Plaintiff addresses each of these "assumptions" in its brief.

According to Defendant, the first assumption is that the amount of construction work, in general, would have remained constant or have grown, and the second assumption is that the general contractors from which Plaintiff obtained work in the past would have been invited by a property manager or building owner to bid on a construction project and that these general contractors would have been awarded the project. However, there was evidence

8

presented at trial establishing the actual amount of drywall subcontract work awarded by Choate and Warren Hanks, Plaintiff's two biggest clients, in 2005, 2006, 2007, and 2008. (Tr. Vol. 4, pp. 84-86, 192-197.) Based on this evidence, the jury did not need to make any assumptions regarding the amount of construction work available during those years, nor whether drywall services were needed by the general contractors with whom Fidelity did business.

According to the Council, the third assumption is that Plaintiff would have been invited by the successful general contractor to submit a bid on the drywall portion of the project as part of a competitive bid process. However, there is ample evidence in the record demonstrating that, but for the Council's actions, Fidelity would have been invited to bid on the actual drywall subcontract work that was ultimately awarded to other subcontractors. (Id., pp. 53, 59, 65, 78-79, 157, 178.) The jury had sufficient evidence before them to find that Fidelity would have been invited to submit a bid on these projects, without making any undue assumptions.

Defendant indicates that a fourth assumption the jury would have needed to make is that Plaintiff would have been the qualified, low bidder in the competitive bid process and been awarded the drywall work. But Fidelity

9

introduced evidence establishing the percentage of drywall subcontract work it had historically performed for Choate, Warren Hanks, and Hammerlund. (Id., pp. 57-59, 192-198; Tr. Vol. 5, pp. 33-35.) The jury could use this history to deducer that Fidelity would have continued to perform approximately the same proportion of the drywall work of those subcontractors, without having to make any undue assumptions.

The fifth assumption, as indicated by Defendant, is that Plaintiff would have earned revenue and a set profit margin for all future work based on a limited selection of some of its past work for certain contractors. But the record shows that Fidelity presented sufficient evidence of its historic profit margins on the work it had actually performed for Choate, Warren Hanks, and Hammerlund. (Tr. Vol. 5, pp. 15, 21-23; Pl.'s Tr. Ex. 138.) Based on this history and the increase in drywall work awarded by these general contractors during the relevant years, the jury could make a reasoned calculation of lost profits.

The jury could decide if Fidelity's history provided the basis for an accurate projection of the profits it may have earned but for the actions of Defendant. The Court concludes that the jury had the benefit of ample evidence

10

to calculate Fidelity's losses based on the record before it without any leaps of logic or inappropriate assumptions. The jury had the discretion to accept or reject Fidelity's projections. Defendant even argued to the jury the same points raised here in an attempt to persuade the jury that Fidelity's projections were inaccurate. Moreover, the Court itself instructed the jury that "[d]amages must not be based on speculation or guesswork." In spite of all this, the jury found based on the evidence before it that they could reasonably calculate the lost profits awarded.

By arguing that it is too difficult to quantify the work that the Council prevented Fidelity from obtaining, the Council might avoid significant monetary liability for its actions. But the Court concludes that Fidelity presented evidence to the jury that Defendant's actions resulted in two major consequences for Fidelity's business: (1) the interference with Fidelity's work on projects in progress or to be awarded, resulting in Fidelity's dismissal from those projects before completion, and (2) the interference with Fidelity's established client relationships, resulting in clients' refusal to invite Fidelity to bid on new projects because of Defendant's conduct. The evidence presented

11

AO 72A
(Rev.8/82)

by Plaintiff will sustain the verdict awarded by the jury, and the award formulated by the jury is not excessive or unreasonable based on the record.

**B. Jury Instructions**

Defendant also seeks a new trial pursuant to Rule 59(a) based on the Court's allegedly erroneous instructions to the jury regarding its consideration of lawful conduct. Upon receipt of the proposed jury charge from the Court, defense counsel objected to the proposed charge regarding the jury's consideration of lawful conduct in two regards. First, the Council objected based on Section 303's requirement that any unlawful secondary object be contemporaneous with unlawful conduct (i.e. threats or coercion). The Council suggested that the Court give a limiting instruction that, when considering the "totality of the circumstances," the jury could not consider conduct that occurred at one location at one time and apply that to later conduct at a different location that might involve a different party. Defendant states in its brief that no such instruction was given. However, the Court expressly instructed the jury that it was "required to give separate consideration to each of plaintiff's claims regarding each of [the secondary employers] separately." (Tr. Vol. 6.)

12

Second, the Council objected to any consideration of lawful conduct by the jury. The Council believes that the jury's verdict was impermissibly tainted in its entirety by the treatment of lawful and unlawful conduct in the charge. Fidelity, however, believes that the charge was an accurate representation of the law.

Section 8(b)(4) of the National Labor Relations Act (NLRA) makes it unlawful for a union or its agents,

> (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is:
>
> (B) forcing or requiring any person . . . to cease using, selling, handling, transporting or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees.

29 U.S.C. §§ 158(b)(4)(ii)(B). Clearly, the statute does not prohibit all secondary activity, but it rather "describes and condemns specific union conduct directed to specific objectives." Carpenters Local 1976 v. N.L.R.B., 357 U.S. 93, 98 (1958). Section 8(b)(4) is violated when (1) the union's conduct threatens, coerces or restrains any neutral employer, and (2) the

13

conduct's object is to force or require any person to cease doing business with any other person, or to force another employer to recognize and bargain with a union that has not been certified. Kentov v. Sheet Metal Workers' Intern. Ass'n Local 15, AFL-CIO, 418 F.3d 1259, 1264 (11th Cir. 2005); Service Employee's Local 87 (Trinity Building Maintenance Co.), 312 N.L.R.B. 715, 742-43 (1993), *enf'd* 103 F.3d 149 (9th Cir. 1993). "Coerce," as used in Section 8(b)(4), can involve "nonjudicial acts of a compelling or restraining nature, applied by way of concerted self-help consisting of a strike, picketing, or other economic retaliation and pressure in the background of a labor dispute." Kentov, 418 F.3d at 1264.

Sailors' Union of the Pacific (Moore Dry Dock), 92 N.L.R.B. 547, 549 (1950) sets forth the minimum standards that must be met for common situs picketing to be deemed primary. Compliance with the Moore Dry Dock standards creates a rebuttable presumption that the conduct is lawful; however it does not absolve a union from liability under Section 8(b)(4). Texas Distribs., Inc. v. Local Union No. 100, United Ass'n of journeymen and Apprentices of Plumbing and Pipefitting Indus. of U.S. and Can., AFL-CIO, 598 F.2d 393, 399 (5th Cir. 1979); Ramey Constr. Co. v. Local 544, Painters, 472 F.2d 1127 (5th

14

Cir. 1973); Gulf Coast Building Co. v. In'tl Bhd. Of Elec. Workers, 428 f.2d 121, 125 (5th Cir. 1970); see also, Serv. Employees Union (Trinity Bldg. Maintenance Co.), 312 N.L.R.B. 955, 958 (1991) (stating that "while compliance might give rise to a rebuttable inference of primary picketing, the totality of the evidence may reveal an underlying secondary objective and overcome the presumption."). The appropriate test then is to consider the totality of the evidence in determining the motive or object of the picketing. Ramey Constr. Co., 472 F.2d at 1135. Under the totality of the circumstances test, in addition to considering the Moore Dry Dock criteria, the factfinder may look at other evidence in order to determine whether the impact of the picketing on the neutral employees who work there "was merely an incident of activity directed at the primary employer or whether a deliberate attempt was made to induce 'those employees to engage in concerted conduct against their employer in order to force him to refuse to deal with the struck employer.'" Teamsters Local 126 (Ready Mixed Concrete), 200 N.L.R.B. 253, 255 (1972) quoting Local 761, Int'l Union of Elec., Radio and Mach. Workers, AFL-CIO v. N.L.R.B., 366 U.S. 667, 673, 81 S. Ct. 1285, 1289 (1961).

15

In short, while some conduct may constitute an independent violation of the statute, other conduct that may not do so but may nonetheless be considered as part of the totality of the circumstances in determining whether the statute has been violated and considered as evidence of secondary intent. Brown & Root, Inc. v. Louisiana State AFL-CIO, 10 F.3d 316, 322 (5th Cir. 1994). Some conduct may render otherwise lawful activity unlawful. Id. As the Eleventh Circuit has stated, the test is whether the conduct involves "non-judicial acts of a compelling or restraining nature, applied by way of concerted self-help consisting of a strike, picketing, or other economic retaliation and pressure in the background of a labor dispute." Kentov, 418 F.3d at 1264.

The Court's instruction that the jury could consider activities, themselves lawful, as part of the totality of the circumstances in reviewing the analysis of the objectives of the union's picketing is clearly in line with established law. See, e.g., General Truck Drivers, Warehouseman, Helpers and Automatic Employees of Contra cty., Local 315 (The Atchison, Topeka and Santa Fe Railway), 306 N.L.R.B. 616, 627 (1994), enf'd 20 F.3d 1017 (9 th Cir. 1994), cert denied, 513 U.S. 946 (1994); Service Employees Int'l Union Local 525 (General Maintenance Service Co.), 329 N.S.R.B. No. 64 [slip op.], 1999 WL

16

958483 at *82 (1999); Service Employees Int'l Union, Local 87 (Trinity Bldg. Maintenance Co.), 312 N.L.R.B. 715, 745, 750 (1993), enf'd 103 F.3d 218, 233 (7 th Cir. 1995); Teamsters Local 776 (Pennsylvania Supply, Inc.), 313 N.L.R.B. 1148, 1153 (1994). Indeed, even "truthful handbills may be used as evidence to show illegality of picketing." *The Developing Labor Law* (5 th Ed., 2006), at p. 1753, n.62. In addition, the Fourth Circuit has upheld jury instructions that explained what was lawful conduct and what was unlawful conduct, and that the company could only recover for losses proximately caused by the unlawful conduct. Great Coastal Express, Inc., v. Int'l Bhd. Of Teamsters, Chauffers, Warehousement and Helpers of America, 511 F.2d 839, 845 (4th Cir. 1975). The Court concludes that the instructions given properly informed the jury regarding the law of secondary boycotts and more specifically the difference between legal primary activity and illegal secondary activity. The evidence showed that the totality of the Council's actions, not just one isolated incident, resulted in the substantial loss of business and profits to Plaintiff. The jury's verdict is consistent with that evidence and the applicable law. For all of these reasons, Defendant's Motion for for Judgment as a Matter

17

of Law or in the Alternative Motion for a New Trial [Dkt. No. 153] is **DENIED**.

## Conclusion

In conclusion, Defendant's Motion to Stay [Dkt. No. 152] is hereby **DENIED**, and Defendant's Motion for Judgment as a Matter of Law or in the Alternative Motion for a New Trial [Dkt. No. 153] is hereby **DENIED**.

**SO ORDERED**, this   11th   day of August, 2009.

*[signature]*

**RICHARD W. STORY**
United States District Judge